The next argument is in Appeal No. 05-1511, Applied Companies v. Department of the Army. Perhaps unusually, this is a case in which both parties agree that the basis of the decision below was error. So what's left of the case? First, I would like to say— But a narrow basis. They didn't agree on your position, however, as to entitlement. Isn't that right? That is, there are differences in the government's brief on the issue of entitlement. That's correct. And we contend that that's not an issue. Well, Mr. Jones, why shouldn't we view it as if error, merely harmless error, that the board misstated the applicable rule or analysis with regard to future profits and their calculation? Because there was nothing at issue below, Your Honor. The issue of entitlement itself wasn't even preserved below by the government at the ASBCA. At the outset of that case— I don't think you're with me. There was a misstatement of law by the board in its opinion, which had to do, I believe, with what money would be due if there were liability. But the board, in the end, found no liability. So it seems to me that that suggests that whatever misstatement was not the basis of the decision on liability, and therefore, even if it was error, was harmless error, and therefore irrelevant to this appeal. No, Your Honor. The board concluded that there absolutely was a liability. The board awarded $1 million to this plaintiff. Well, what's contested is the other $20 million. That's what we're here on. We're not here on what the board awarded. We're here on your appeal for what the board refused to award. And I don't see that as turning at all on the definition of future cost savings. It seems to turn instead on the scope of the various modifications that, in conditional and partial respects, adopted your 1989 change proposal. Well, that's exactly right. What the government says here, what the government has ably argued in its brief, is that the change order that adopted the VECP did not, by its terms— I don't care what the government's arguing. You started out by saying there's error here. Both sides admit there's error here. We win. Reverse and send it back. And I'm saying that error looks to me like a probably harmless error, in which case rather than reversing, we would try to assess whether the board was correct in finding that you're not entitled to any liability judgment with respect to the $20 million you want. Well, to the extent that that is an issue of entitlement, Your Honor, I believe that the way the board's decision reads and what the government is now arguing is that you're not entitled to that additional money, that is, to savings on other sizes of air conditioners. Well, but the value engineering proposal expressly recited 36,000 BTU units, right? Only. Only. It didn't mention any other size or configuration. And so when we go outside of that, haven't we gone beyond essentially the same unit, which is required for you to share in the savings? That, Your Honor, I think is a question, and that's the question that I would like to address, which is interpretation of the change that adopts the VECP. The government is arguing for a narrow interpretation. They're not arguing for a narrow interpretation. They're arguing for reading it for what it says, and what it says is limited to 36,000 BTU air conditioners, just as Judge Rader said. What you seem to be saying is, no, no, read it as if it also listed the other 20-some sizes and configurations. That seems preposterous to me. I mean, contracts are formal written instruments that are supposed to make clear what the parties have agreed to. As far as I can tell, when you look at your change proposal and then you look at mod 9 and mod 13 and mod 15, what you conclude in the end is the government agreed to sharing the savings with you within the confines of this contract or at least within the confines of this 36,000 BTU conditioner, period. I don't see any basis for saying anything else. The change itself refers to the specification. It doesn't matter what the change proposed. What matters is what the government agreed to, wrote up, which you then signed. And that's mod 9, and mod 9 is clearly limited to the 36,000 model. Mod 9 was issued under a contract that only included those air conditioners, Your Honor. It can only change that particular contract. The question here comes in, if you take a change made by mod 9 and you apply it to another air conditioner, is that compensable under the value engineering clause? Only if mod 9 says so. And the parties negotiated the terms of what mod 9 would say and what it wouldn't say. And it does say 36,000, and it doesn't say anything about any of the other air conditioner types. It seems to me that's the end of your case. Your Honor, I would like to read a sentence from the concurring opinion of Judge Kiney in this case. You can read anything you want. It says, in general, I would find that the parties intended for the VECP to be applied to the entire family of air conditioners. Why is that relevant, what they might have intended, based on certain recollections of certain people at certain times, if the subsequent documents clearly on their face, agreed to and signed by both parties, and becoming a part of the contract through three modifications, expresses a different agreement? Why isn't it the written instrument that binds not preliminary discussions by various people with various degrees of involvement? Because, first of all, the modification, Your Honor, is a contract. It's an agreement between these parties. Exactly my point. And it says what it says, and we don't look outside of it to guess what somebody previously might have thought it might say if the negotiations turned out differently than the way they did turn out. With due respect, Your Honor, I disagree. Well, I understand your disagreement. I think the law is quite clear that if both parties attach particular meaning to a contract, and if that's their intention, then that's the meaning of the contract. I think if you look at the FAR, that the FAR contemplates that the savings will be shared for those items that the parties agree, that's the word in the FAR, agree, are covered. And to find out what the parties have agreed or covered in the way of items, you look at the mods. And when you look at the mods, the only thing covered is the 36,000 BT unit type air conditioner. The language to which you refer... Do you disagree with me? Is there something in here that refers to other air conditioners in these mods, in Mod 9 or any of the others? In the mods themselves, Your Honor, only to the extent that the mod does contain the term, and it does contain a sentence and a statement of purpose, that the purpose is commercialization of Mil-Spec air conditioners, period. Then it goes on to discuss the details of that commercialization. If Mod 9 said, we agree, we the government and the contractor agree, that in addition to the 36,000 BTU air conditioner, that every other air conditioner covered by Mil-Spec so-and-so and so-and-so also describes the items where we will share the cost savings. If it said that, you would win. But it doesn't say that. I don't think it needs to say that. You're asking us to read it as if it did say that. I don't think it needs to say that. Mr. Jones, isn't there a factual finding that the 21 other units have different designs, different components from the 36,000 BTU units? The finding, Your Honor, is that they have their own drawings. They're different. And there are differences, and the finding also says, albeit with commonality. Now, I would point out here also— But as long as there are differences, we can't say that they're essentially the same unit, and that becomes the crux of this matter, doesn't it? As long as there's a factual finding which we can't contravene as an appellate body that says they're different, we can no longer accept your argument that they're essentially the same based on the facts that were found below. Am I missing something there? The difference here is simply that the factual finding contains both statements of differences and statements of commonality. The conclusion that they were different— Can you show me that in the opinion? Which number is it? In the factual findings? Yes. I couldn't turn it up quickly. They're numbered up to 25. Which number is it? We're talking about factual finding 14. 14, yes. Okay. It talks about MSPEC 52767. Well, yes, this is what I did read before. And there's a lot of different configurations, it says, with different component parts. Each configuration would need to be attested and approved. Such differences would involve different costs for different— The word different has come up here about six times in one reading. Right at the end of 14 here, the factual finding 14, at the top of page 15 of the opinion here. Well, that begins by saying the previous discussion contains the words similar components tested similarly, had similar functionality, etc., etc. And then that section to which you were referring says, well, the differences appeared minor. Now, what the proof did in this case was it established by testimony the commonality, the similarity of all of these air conditioners that fell under this spec. The representatives of the government that were there under subpoena testified to that similarity, testified that the commercialization— Are you saying the finding was wrong and that we should re-find it the way you would like, or are you saying it was found in your favor and we're just misreading the verbiage? I'm saying that that finding is incomplete. It's fine as far as it goes. Well, is it reversible under the substantial evidence standard or not? To the extent it's read as saying that these things are different and it doesn't apply, it darn well is because Judge Kleinman says that isn't right. Well, but he's not in the majority. He's the only—he's the one who disagreed with you. That doesn't make any difference. I beg your pardon? It doesn't make any difference whether he was the hearing judge or not. The findings are always made by the three board members or the two who are in the functional majority. So what he says is speaking for himself, not for the court, the board. One of our issues, as you know, is that this case should have been decided, the facts should have been found by the judge who saw the witnesses. Now, in response—and on both of those points, that is, his status— But we don't get to make those rules. And the weight to be given to the findings. Do you want to save any of your dwindling rebuttal time? I do. I want to read one more line here that I think must be considered that goes to the heart of this issue. Again, this is from Judge Kleinman's concurring opinion. And this has to do, Judge Michel, with the question you asked is to what did this apply? He says, because Colonel Mills and Mr. Mabry, the senior officials who were responsible for acceptance of this DECP, and Mr. Klinger, chief executive of the contractor, all agreed that the commercialization VECP applied to the entire family of air conditioners. Each of those units was within the meaning of unit as defined by the VECP clause. So can I summarize your argument? You're saying that these meet the statutory regulatory criterion, that they're essentially the same item. Is that right, even though which may or may not be true of all, but are you saying that it may be true of some of the other devices? I'm saying that the proof here was that this VECP was intended to and did apply to the entire family of air conditioners. And that was the proof from both sides. No one said this VECP doesn't apply to the rest of the family of air conditioners. There was no such testimony. Thank you. Mr. Poirier. Help me with your name. I should have it by now.  Your Honor, it's Poirier.  Thank you. Please proceed. May it please the Court. During the previous argument, I think that there was some confusion creeping in on the liability determination that was made below. There was a liability determination made with regard to what was called the MPI air conditioner. It was a 36,000 BTU air conditioner, but not exactly the same model as was in the contract. So it was not exactly the same unit, but the Board found it was essentially the same. For example, it had the same national identity number as you found in the VECP. Its components, except I think two exceptions, were the same. Right. So the Board drew the line between two similar 36,000 models and the models of other capacities. Right. And I think the key fact finding for the Board was that it said with only two exceptions, it had the same components. The VECP is 43 pages long, just the initial 2.9. It's got very detailed instructions. It has a lot of testing requirements. And these were not idle requirements. Over a period of years, it turned out to be very difficult to test these proposed substitutions and to get the results that they needed to get. And in fact, that was a big complaint that applied companies had. They said, you ate up all our savings making us test all these things. So on that ground, anyway, the Board held that the specific VECP could be applied to this unit because they said it's essentially the same. But weren't the principles identical? The principles on which the savings were based were identical. If, in fact, a certain amount of the saving was used up in testing and implementing, that would go to quantum, perhaps. But wouldn't the principle nonetheless apply? There was the identical principle, just replace custom-made components with off-the-shelf? No, it wasn't. With all due respect, it wasn't the concept. It was the specific components. In other words, they did testing. They had proposed these commercial components. Some of them didn't work. They had to go back and replace certain valves. They had to do certain retrofitting. In other words, the value came. Initially, the government had specified parts. We've done our research. We've done our testing. We know if you build it this way with these parts, we'll get a good unit that we can use in our military units. The value of the VECP was to say, we can come up with these other specific commercial parts that if we put it together in a certain way, it'll be just as good. And that was the value. And what I'm saying is, as a practical matter, leaving aside the legal details for a minute, that doesn't apply to any of the other 21 units that are at issue in this case because we don't know. They're not the same components. They haven't been tested. They haven't been costed. With regard to the MPI unit, we can say we did get the value because they're so similar. We know that we can pretty much plug things in. The concept, to the extent that the concept was implemented, if, in fact, it took testing to implement it and to determine the details, that doesn't remove it from the principle, does it, of the VECP? Well, I guess I'm uncomfortable, Your Honor, when you're saying that the concept was tested. The concept of commercialization is… A VECP applies to a unit, not a change principle. Isn't that correct? Right. It applies to a specific unit, in this case identified as the 36,000 BTU air conditioner. And that's because the FAR says that's all that a value engineering change proposal can apply to. Right. It requires that the item be identified. So it's an item, not a concept, not a principle. Right, which is the Bianchi case also says. The FAR says essentially the same item. So it would have to, could very well, at least it's contemplated, that it could very well go beyond the specific item if something else is essentially the same. It can if it can be applied to something that's essentially the same. And I think that the illustration of the division of the findings of the board is helpful to understand what that means. In other words, with regard to the MPI unit, it could be applied because it was essentially the same unit so that all the specific requirements of the VECP for testing, for drawings, for warranties and so forth, all of those things you could say, we can rely on it. It could be applied is an odd way to put it because that makes it sound speculative into the future. I understand your whole point to be, you know, for a fact that it's applicable because you've already tested it with one 36,000 unit and the other 36,000 unit is so nearly identical that the test results in the first case obviously tell you what will happen in the second case. But with regard to a 9,000 BTU unit, the test would not be transferable. That's right. And in fact, and I think one of the most powerful bits of evidence from the record regarding that is in the initial letter that was sent by applied companies to the government saying here's our proposal, the very first one, July 7th, 1989, it says this is our VECP proposal for the 36,000 horizontal unit. We are providing you with a separate VECP for the 36,000 vertical unit. In that case, it had the same number of BTUs and the testimony was that they're just configured different. But even for that, the company acknowledged at the outset before the mod was signed that that's a different unit. It requires a different VECP. But Mr. Poirier, could you respond to what Mr. Jones read to us from Judge Kynland's article about his concurring opinion? Because Colonel Mills, Mr. Mabry, and Mr. Klinger all agreed that the commercialization applied to the entire family of air conditioners. He would then have said they're essentially the same. It was the same unit. I think I can tell you what I think was going on, and that was that there was a dispute with regard to how broad the VECP clause in general. In other words, it was a philosophical dispute in terms of how to interpret a VECP clause. Isn't the important thing here the sequence? The conversations that Colonel Mills testified to and that Mr. Mabry testified to preceded the submission of the change proposal by the contractor. So it seems to me that the normal assumption would be whatever they said or thought or surmised or guessed then, no longer operative because now it's being negotiated between the government representative and the company representative on paper, in specific, in detail. And therefore, the meeting of the minds that forms the contract is what the exchange of the written documents yielded, not some preliminary thinking and discussion by various people. I couldn't agree more. That's absolutely bedrock. The contract interpretation has to start with the language of the agreement. There are circumstances where you can bring in parole evidence, but that's when there's a gap, when there's an ambiguity. This is a 40-page long modification. The only ambiguity that I understand Mr. Jones to be pointing to is the reference in the proposal to the mill spec. So he's saying, well, that incorporates by references the other 20-some types of air conditioners. And, you know, if we read it that way, then he wins. And if we don't, he doesn't win. But other than that, I didn't understand him to be asserting any ambiguity. I don't think that can reasonably be construed as an ambiguity. And furthermore, there's an admission in page 205 in the Joint Appendix where the president of Applied Companies agreed that their VECP was only for the one unit. It only identifies the one unit. So there's no ambiguity, and that wasn't the understanding of Applied Companies. Also, I couldn't understand why the recollection or opinion or statements of Mills or Mabry would have any legal force or effect anyway. They weren't the contracting officer. They didn't negotiate the deal. They were officials in the background for whom the contracting officer worked. But there's no indication that the contracting officer was under orders from them to have the change proposal apply to all the 20-some types of air conditioners. It seemed to be quite the opposite, that he seemed to be quite free to limit it to just the 36,000, and he did. In fact, the course of negotiations confirms that, Your Honor, because even though Applied Companies sent in a VEC proposal that was limited to the one unit, it was further refined, and the VECP was negotiated to require even more specific testing to those specific parts before it was finally signed at the end of July. So I have to agree. And Judge Kainlan, after the reconsideration motion, wrote another opinion, didn't he? And in that one he said, in order for a unit to be essentially the same, the savings would have to be essentially the same savings as in the instant units. So he seems to be backing off himself, doesn't he? The key factual finding is whether or not it's essentially the same, and that finding was made in the context of a damages conclusion. But it really is best applied in terms of entitlement, in terms of whether or not the modification can be applied. I wanted to point out one thing which came up in a moot court argument that is not particularly clear in my brief, and so I just wanted to try to make it more clear for this court. That is that we have two essential arguments. Both of my arguments relied on the plain meaning of Pooh 9, but they're different and separate arguments. And one of them is the one we've been discussing. That is that there are very specific requirements in the BECP that's in Pooh 9, and those requirements can only be applied to essentially the same item, the 36,000 vertical unit, with the same components. That's our main argument. We made an alternative argument, which was, in addition, in Pooh 9, it clearly says that there's going to be no compensation with regard to other contracts. Now, when Mr. Jones got up, he said that there was a ruling for liability. Well, there was never a ruling by the board that the BECP had been applied to these 21 other units. That's not true. With regards to the MPI unit that I referred to, Your Honor, the 36,000 that was slightly different but had only two components that were different, our second argument was rejected with regard to that unit. So our second argument, there was a finding of entitlement because our second argument was reserved for law. And so then the question comes up as to whether or not we can argue that second argument to this court because we didn't cross-appeal. It's a thorny issue. I believe we can argue that second argument because we've waived any objection to the million dollars. We're not seeking to change the judgment. However, it is a somewhat thorny legal issue, and I just wanted to make sure that the court understood that that issue is in no way connected to our main argument. Counsel, do we have a Chenery problem in this case? Are you, in effect, asking us to affirm the board's result on the basis of a different rationale than its plurality relied on? I don't think it's a Chenery problem, Your Honor, but to tell you the truth, I'm not familiar enough with the Chenery doctrine to really do a good job. I mean, if this were coming from a district court, we absolutely would be required, not merely permitted, to affirm if we could see an alternate basis different from the rationale relied on by the district judge but supported by evidence of record. But in the case of administrative tribunals, including a contract board, the rule seems to be the opposite, that we can only affirm if the rationale of the board is adopted by us. And if we like the result, think the result was correct, but that the rationale was wrong, we normally have to send it back. Now, to the extent the board relied on failure of damages proof to reject the $20 million or so requested by this contractor, it seems like that's the wrong rationale and that you agree it's the wrong rationale. And then you're getting awfully close to saying, but there's a different rationale that you can suggest here or did suggest in your brief, and we should just substitute rationales, and I think that's what we maybe aren't allowed to do. Well, I don't think it's a general issue because I think that that's a rulemaking type concern, and I think it's APA. This is definitely not an APA case, and I'm glad you brought that up. I want to cite to you a case by the Federal Circuit saying that APA does not apply to the board. That's Fidelity Construction Company, 700 Fed Second, 1379, and the jump site is 1386. It's from 1983. All right. Your time has expired. Thank you. Thank you, sir. Mr. Jones will restore two minutes of rebuttal time if you need it. Thank you, Your Honor. I point out, first of all, that as to the applicability of the change to the other family of air conditioners, there is no finding by the board, within the board's finding, in fact, that this change was or was not applicable to those air conditioners. What Judge Kynan was talking about, to be clear, was to say that he would make such findings as to the party's intent, but the board made no finding either way. It just discussed the details of the matter. And, Judge Michel, I would differ with you on the evidence that, in fact, this change, this VECP, was negotiated by Colonel Bills and Mr. Mabry, and as to whether the other They had some oral discussions after which the company submitted a document and the government submitted a counter document which the company signed. My only point was we look at the documents actually signed by the parties to show their mutual intent and the content of their agreement, not to parole evidence of preceding discussions that preceded the drafting of the documents. Parole evidence is evidence that contradicts the terms of a written document. Evidence of what the parties discussed and intended, particularly where they agree on those discussions and contentions, is always admissible. That's Restatement 201. Where they attach the same meaning to the document, that is the meaning that will be enforced. And as to the requirement that these other units might have needed testing, Colonel Mills specifically testified. I also felt confident that we could demonstrate commercialization or commercial substitution through one of our air conditioners in the family that we were safe in using the clause to eliminate source control in our contracts. Finally, I'd offer a supplement. What does that have to do with change proposals and the cost sharing? That just means that the military, as a matter of its own judgment, may choose to eliminate the Mills spec requirements in all future air conditioning contracts. That has nothing to do with the right of a party to share in cost savings. That's just a judgment the military may or may not make in future cases. If that judgment was compelled or justified by this VECP and its success, then this contractor is entitled to share in the savings that the military achieved by doing that. That is the clause. That is the law. And I'd also like to point out and give you a supplemental citation. It's B.F. Goodrich Company of the United States, 398 Fed 2nd, 843. It stands, among other things, for the proposition that when in doubt, the value engineering clause, which includes the words unit, applicable, and essentially the same, should be interpreted against the government. Thank you. All right. We think both counsel will take the appeal under advisement.